May it please the Court. My name is Amy Baggio and I represent the petitioner William Estey in today's appeal. The question before this Court is whether the State Court reasonably found facts and made conclusions of law in holding that Mr. Estey was not in custody. As stated by Justice Ginsburg in the Thompson v. Keohane decision, the custody determination comes down to whether a reasonable person would feel at liberty to terminate the interrogation. In reviewing the Supreme Court precedent and this Court's own precedents, I believe that seven relevant factors applied to the facts of this case result in the conclusion that any reasonable person in William Estey's place would not have felt at liberty to terminate the interrogation. Those factors are, first, the language used to summon the defendant, second, the location of the interrogation, third, the separation of the defendant from others who could provide moral support, fourth, the confrontation by the police with evidence of the defendant, fifth, whether the defendant was told he was free to leave, sixth, whether in fact he was permitted to leave at the conclusion of the interrogation, and lastly, the length of the interrogation. And I'm going to stop you because I understand you want to jump into the merits, but this is really a, this is a habeas case, so we're looking at AEDPA. And as I understand it, you're making a 2254d-2 argument, correct, that there was an unreasonable determination of the facts in light of the evidence. That's correct, Your Honor. And so in looking at Taylor v. Maddox, which in our circuit lays out the 2254d-2 types of claims, it seemed to me that you were making the case that it was a failure to consider and weigh relevant evidence. Is that the type of 2254d-2 claim you're making? That's correct. As well as Taylor also talks about, it can also be a d-2 claim if the State court fails to apply the correct legal standard. And I think failing to apply all the factors previously recognized by this Court and the Supreme Court could also constitute a violation of d-2. If it's an unreasonable determination of the facts or overlooked or ignored evidence, you need to show that there was evidence that was highly probative, central, and sufficient to show that your client was in custody in the context of the full record. I mean, that's what Taylor says is the test for that sort of claim. Yes, Your Honor. What evidence did the court, the district court here, overlook or ignore that meets that standard? The district court, similar to the conclusion of the State court, ignored the facts specifically. The facts – would you like me to address each of the factors? The facts ignored by the district court that relate to the factors? What fact or facts was so central or probative that it would have, on the face of this record, that it would have made the State court's determination unreasonable? Now, the State court didn't go through every fact that the Supreme Court has ever said shows that someone is or isn't in custody. But it did find certain facts and made the legal conclusion not in custody. And I couldn't find in the record – and this is my problem, so maybe you can point out to me – any fact that was so overwhelming or so probative, so central, that it would say, well, the State court was just completely unreasonable to have overlooked this. So maybe you can point that out to me. Yes, Your Honor. The analysis here is not a rise or fall on a single fact, but the totality of circumstances analysis. And in looking at the multitude of facts that I've highlighted in my brief, but specifically, I think that the language that was used to summon the defendant to the police station, even the police officer said that they told Mr. Esty, we need to talk to you. And I think it's also important, a fact that was ignored by the district court in its discussion of the – its application of facts to law, as well as ignored by the State trial court, is that statement, we need to talk to you, did not occur in a vacuum, but in the context of the police officer previously having the complainant call Mr. Esty and tell him, I'm going to the police to accuse you of misconduct. And so we have to, again, look at the full record. So in terms of the police officer saying, you need to come down here, and Mr. Esty testifying – No, no, those are two different things. We need to talk to you, and you need to come down here are two different propositions. Mr. Ludwig testified, or Officer Ludwig testified that he, quote, requested, and the State trial judge said requested. Now, also it was, we need to talk to you. That's also in the record. But I need to talk to you. An ordinary talk is not necessarily a command to you. You come down here or else. And the trial judge, the trial judge says that he was requested. How do I get around that finding by the State trial judge? Well, Your Honor, if we look at what Detective Ludwig also said, he says at ER-122 that he did not recall the specific words that he used on the phone with Mr. Esty. And Mr. Esty was quite adamant about the words that were used. And on vehement cross-examination by the State, he stuck to his gun, saying, they said, you need to come down here, we need to talk to you. And I think that that's important, as it was in Taylor v. Maddox, the ambiguity in the officer's recollection. The other facts that – and also Ms. Henson's testimony as well. But I think in the context of the first call accusing Mr. Esty of wrongdoing and then in the context of that, the officer's saying, you need – we need to talk to you, or at Mr. Esty's version, you need to come down, we need to talk to you. It's a summons. Alone, if that's all that I had, I don't think that there would be custody. But that's the beginning of this interaction. And then the location. The location was at a police substation. Your Honor, that wasn't a fact that was ignored. That is but another fact that I think, in the full context of this record, is an important consideration and one that weighs towards a finding of custody. Because whether it was a substation or a – the official police station, it was a police-controlled environment, something that this Court in Bassignani noted was – in Brooks, rather, was an important consideration. My problem here is you point to factors which indicate the State court could have come out a different way and held it was custody. But the State court didn't. And we have cases like Yarborough v. Alvarado where the Supreme Court says, well, on habeas, unless there's something extremely significant or unreasonable, then we defer to the State court. And so there's not – I'm troubled because there isn't anything that says, no, this was absolutely wrong for the State court not to have noticed that. In fact, he was summonsed to the station at gunpoint. I mean, if the State court had ignored that fact, clearly that would have been an unreasonable determination. I would like to offer another fact, then, if I may, that I believe that the State court ignored, and that was the police officer telling Mr. Estienne's fiancé that he would be permitted to leave after she returned from her errand. If we put that statement in the context of the Thompson v. Keohane analysis, would a reasonable person feel free to terminate the interview? I think that the trial judge could understand that statement to mean you have time to run your errand, and by the time you come back, you'll be out of here. I don't think that that's a statement that we're going to keep your person here under distress until you come back. Well, Your Honor, I think that it could be interpreted that way. And if it could be, if that's a reasonable interpretation, picking up on what Judge Yakuta said, where is the ineluctable evidence that shows that he's been kept in custody? Your Honor, I believe we can't, again, it's no single piece of evidence, but it's all of the evidence that I've outlined in my briefing, that if you look at it under the totality of circumstances, these facts suggest that any reasonable person in Mr. Estienne's position would not feel that they were free to terminate the interrogation and leave. And I agreed with you, Judge Beyer, just like I spoke with Judge Yakuta, none of these individually would suffice, but I believe as a whole, they would constitute custody. I have one minute. I'd like to reserve that for rebuttal, if I may. Thank you. We'll hear from the State. May it please the Court, Counsel Inge Wells, on behalf of Respondent Jean Hill. The State trial court's decision in this case denying the motion to suppress was not an unreasonable determination of the facts, as this Court has set out that analysis in Taylor v. Maddox. I will acknowledge that the State court did not walk through every conceivable factor that might weigh on whether or not this individual was in custody, but the State court's findings addressed the issues that I think were significant in this particular case, the first one being that the defendant was not hauled out of his house at gunpoint. He was asked to come to the police substation to talk with Detective Ludwig about some issues regarding his daughter. He came to that interview. He was asked to come to the police substation to talk with Detective Ludwig about some issues. He knew by then what those issues were because his daughter had just talked to him on the telephone. Yes. These are not just some random issues. No. The record at the suppression hearing isn't really clear about it, but it is clear from the entire record in this case that, yes, the daughter had called him and confronted him essentially with these allegations. And I think that that becomes interesting in the context of the interview, because what happened when he and his fiancé arrived at the city hall was the fiancé wanted to sit in on the interview. It was, according to Detective Ludwig, the defendant who said, no, you know, I don't need you here. And, again, considering the allegations that were going to be discussed, that might perhaps make some sense. And then all of the evidence at the suppression hearing was that the conversation between the officer and the defendant was polite, was non-confrontational. No, no, that's not true. Polite, but then Detective Ludwig at some point says, but I became confrontational. Polite, but confrontational. What he said was that he – the defendant initially denied the allegations that he challenged him about that denial with the statements that the daughter had made. And, yes, the detective did say that I suppose that would be viewed as being confrontational, although voices were not raised and people weren't yelling and shouting. But, yes, that is correct. So you can't say non-confrontational. Given Ludwig's evidence, polite but confrontational probably is more accurate. That's fair, yes. And that – Can I ask you, I was troubled by this recent case of ours, United States v. Brobst. And I'm wondering whether, in light of what we said was reasonable as the person being in custody in that case, whether that made the state court's determination less reasonable. There we said, where the deputy said to the individual, you need to come with me or words to that effect. This statement is a command or show of force. And then there was a very brief interview in the kitchen of his house with the police officer. And we said that was a custodial interview and his statements there about the child pornography had to be suppressed. Had this case been before the state court when the state court was making a determination, does this case make it unreasonable how the state court evaluated the facts of this case? I think that I would distinguish that case because of the fact of just the setting. Yes, it was that individual's home, but he arrived at his home to find, if I remember correctly, a search warrant being executed and officers sort of crawling all over his house. And when he approaches the house, he is then told by these officers, you need to come in here and talk to me. I think that that's a very different atmosphere than asking someone to come to, you know, a city hall office to talk about these allegations. And that's the way that I would distinguish that case. I also want to comment about a couple of things in the Bassignani case that was cited by counsel in a memorandum of supplemental authorities to this case that I think are interesting in light of the facts of this case, because in the interview in this case, the defendant eventually acknowledged that what his daughter was saying was true, but said it's a family matter, you know, this is something that I want to be able to go and take care of within my family. It's not something that the police need to be concerned about. And one of the things that this Court considered in Bassignani in determining whether or not an interview was custodial was the fact that the defendant in that case sort of acknowledged, you know, I think I am in trouble here, but was engaging in a conversation with the officers to try to figure out how much they knew and what might really be going on. And I think in our case here, again, the defendant was participating in this interview in part as a way to say, let me just go take care of this myself. You know, you don't need to be worrying about it. And I think that those statements on his part go to the fact that this was just a conversation that he was having with these officers and not a situation where he felt that he was in custody. And then the second issue in Bassignani was that, like in this case, the defendant was told at the start of the interview that he would be free to leave at the conclusion of the interview, and this Court found that rather than that being evidence that he wasn't free to leave at the beginning, in fact, that cut the opposite way and established that that would lead the defendant to feel that he was not in custody. What are we to do with the question of how long this lasted? Detective Ludwig says 20 minutes, but then he says that's a guess. That's in the suppression hearing. Also in the suppression hearing, Crabtree says that Hinson comes back to check several times. Now, if somebody comes back several times within 20 minutes, and Ludwig has said that a guess, I think we say, you know, 20 minutes sounds a little bit short. And, of course, we have testimony at trial that's an hour. Now, you've argued in your brief that we can't consider what comes at trial because there was no motion to reconsider. And fair enough. I think that probably is right. I think that is Oregon Law and it was at the time of the decision. How important is it? Let's assume that a reasonable person looking at this record where Ludwig says a guess and Crabtree says Hinson comes back several times to check. Kind of has in his back finder's head, oh, you know, could have been 40 minutes. Does that make a difference to your case? I don't think that it does. I would agree with you that the only testimony of any time at all was the I guess it was about 20 minutes. And certainly the evidence from Crabtree could have led the court to infer that perhaps it was longer than that. But it's also equally possible that Ms. Hinson was anxious and worried and was rapping on the door every five minutes. But if she's doing that, if we have a sort of frantic Hinson outside, that may cut against you. It may sound like he's in custody. The difficulty is that what we have in the record is that 20 minutes. It may be a bit longer, but there was nothing before the State court making the decision on this motion to suppress that, no, it was an hour, no, it was two hours. Frankly, I think if it was 20 minutes, 40 minutes, or even as much as an hour, probably doesn't make a lot of difference to the bottom line in this case, which is that this defendant was not in custody. And unless the Court has other questions of me. Roberts. I think not. Thank you. Ms. Byshew. I'd like to make three brief points on rebuttal. First, the State states that the record is somewhat lacking regarding the daughter's call. I would point the Court's attention to ER 148, in which Mr. Esty spoke to exactly how she called him and made the accusation and said that he was going to police. Second, the State said that Mr. Esty said that Mrs. Henson should wait outside. I think that it's important to look at ER 40 regarding that factor, because even the detective admitted that Mr. Esty may have acquiesced in Detective Ludwig's request that the conversation be private. Third, regarding the Bassignani decision, I wanted to make two brief points on this. First, the discussion of the defendant acting in a strategic way took place under the Court's consideration of the factor about whether he was confronted with evidence. And here it's clear that he was confronted with evidence. And lastly, regarding the holding in Bassignani about the defendant would be free to leave afterward, I think a very important distinction in this case is that in Bassignani he was repeatedly told he was not under arrest, and that is not the case in Mr. Esty's situation. Thank you. Okay. Thank both of you. Very nice arguments. Esty v. Hill, now submitted for decision. The next case on the calendar, Ramirez v. Oregon Attorney General, has been submitted on the briefs. The next case on the argument calendar is United States v. Ramirez.
judges: Paez, Rawlinson, Jenkins